# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5684 | **DATE** | 12/16/2004 |
| **CASE TITLE** | JOHNSON vs. CHICAGO | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants motion for summary judgment is granted. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | DEC 20 2004 | |
| | Notified counsel by telephone. | | date docketed | 49 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LAVERNE JOHNSON,

    Plaintiff,

v.

CITY OF CHICAGO,

    Defendant.

No. 02 C 5684
Judge James B. Zagel

**DOCKETED**
DEC 2 0 2004

## MEMORANDUM OPINION AND ORDER

**I. Background**

Plaintiff Laverne Johnson was employed by the City of Chicago, Department of Health ("CDPH") from July 16, 1987 until November 27, 2000. At the time relevant to this suit, Plaintiff held the position of Supervising Communicable Disease Control Investigator ("Supervisor"), within the CDPH Division of STD/HIV/AIDs Public Policies and Programs.

The CDPH is generally responsible for providing clinical care for persons with STDs and HIV and for preventing the spread of STDs and HIV. The CDPH operates approximately 6-7 clinics throughout Chicago. Each clinic is staffed by a Supervisor, CDCI clinicians, clerks, certified medical assistants, and laboratory technicians. Some of the busier clinics have a Lead Disease Intervention Specialist (Lead DIS) who provides assistance to the Supervisor. As a Supervisor, Plaintiff's duties included: ensuring quality standards were adhered to, completing employee audits in a timely manner, scheduling staff work assignments, staff training, preparing and maintaining the clinic's program records, monitoring and evaluating patient work flow to ensure efficient clinic operations, and ensuring quality patient care. Plaintiff's employment was

terminated on November 27, 2000. The reason given for the termination by CDPH was failure to adequately perform the duties required of a Supervisor.

During her employment, Plaintiff filed four complaints with the Equal Employment Opportunity Commission ("EEOC") two of which are relevant to this case – Plaintiff's May 3, 1999 complaint, alleging age discrimination and retaliation, and Plaintiff's July 1, 1999 complaint, alleging retaliation. On May 3, 2002, the EEOC issued Plaintiff notice of right to sue letters on those two complaints. On August 9, 2002, Plaintiff filed a *pro se* complaint in this Court, alleging discrimination based on age and retaliation.

## II. Analysis

I have before me CDPH's motion for summary judgment. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). In determining whether any genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of fact exists only when, based on the record as a whole, a reasonable jury could find for the non-movant. *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999).

### A. Conduct Occurring Before October 1998

First, CDPH argues that Plaintiff's allegations related to conduct occurring before October 1998 should not be considered in this Complaint because they were not included in either of Plaintiff's EEOC complaints. As a general rule, any discriminatory acts alleged in a federal lawsuit must be contained within the underlying charge of discrimination filed with the

2

EEOC or fairly encompassed within that charge. *Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). The purpose of this requirement is to give the defendant notice of the factual basis of the discrimination claims and allow the EEOC and the employer the opportunity to settle the dispute. *Id.* In her May 3, 1999 EEOC complaint, Plaintiff explicitly stated that the alleged discrimination began in October 1998, and in her July 1999 EEOC complaint, Plaintiff explicitly stated that the alleged retaliation began in May 1999. Thus, any actions occurring before October 1998 were not included in her EEOC complaints and cannot be included in this suit.

### B. Plaintiff's *Prima Facie* Case

Next, CDPH argues that Plaintiff's claims of age discrimination and retaliation fail because she cannot establish a *prima facie* case for either claim. In the absence of direct evidence of discrimination and/or retaliation, as is the case here, the plaintiff must establish a *prima facie* case for each. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case for age discrimination, the plaintiff must show that she is a member of a protected class, she suffered an adverse employment action, she was performing her job satisfactorily, and similarly situated employees who were not members of the protected class were treated more favorably. *Id.* Similarly, to establish a *prima facie* case for retaliation, the plaintiff must show that she engaged in a protected activity, she suffered an adverse employment action, she was performing her job satisfactorily, and she was treated less favorably than similarly situated employees who did not engage in the statutorily protected activity. *Hilt-Dyson v. Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). CDPH claims that Plaintiff has not established that she was satisfactorily performing her supervisory duties or that another similarly situated

3

employee was treated more favorably. CDPH also claims that many of the actions Plaintiff complains of do not constitute adverse employment actions.

### 1. Plaintiff's Job Performance

Since Plaintiff was promoted to Supervisor in 1996, Plaintiff's performance has been marginal, at best.[1] In 1997, Plaintiff received an employment evaluation rating of 2.3, a score that fell between "Requires Improvement" and "Good." Her evaluation stated that she had difficulty in maintaining effective working relationships, received two complaints of rude and belligerent behavior, and failed to supervise her staff and their workloads adequately. As a result of her low rating, Plaintiff was given a "Performance Improvement Plan." In addition, Plaintiff received two disciplinary actions in 1997. On December 4th, she was given a written reprimand for failure to complete her supervisory audits, and on December 5th, she was given a three-day suspension for rude and combative behavior exhibited during a pre-disciplinary hearing.

---

[1] Despite receiving the standard *pro se* instructions for responding to a motion for summary judgment, Plaintiff did not make any attempt to respond to CDPH's Statement of Undisputed Facts nor did she submit her own version of the facts. The Seventh Circuit has "consistently and repeatedly required strict compliance" with Local Rule 56.1. *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995). A party's *pro se* status does not relieve them from complying with the court's procedural requirements. *Gleash v. Yuswak*, 308 F.3d 758, 761 (7th Cir. 2002).

Plaintiff does dispute some facts in her Responding Memorandum and attempts to support her allegations with various attachments to her Response. However, many of those attachments actually support CDPH's version of the facts. For example, Plaintiff claims that CDPH falsely accused her of allowing her 18-year-old daughter to access personnel files and hand out employee pay stubs. For support, Plaintiff points to Attachment 9, which contains statements of clinic employees who claim to have seen Plaintiff's daughter registering patients at clinic computers and handing out pay stubs. Other Attachments, such as those containing unidentified, unsworn, hand written statements are clearly unreliable. And yet other Attachments appear to be completely irrelevant to this case, including unrelated letters of reference, performance evaluations and memos predating 1997, a death certificate, and Plaintiff's medical records. Because Plaintiff has failed to properly rebut or dispute CDPH's Statement of Undisputed Fact, I am accepting it in its entirety.

In 1998, Plaintiff received a rating of 2.55, again a score in between "Requires Improvement" and "Good." The evaluation noted that her performance was inadequate in many areas including: providing recommendations to her staff for improvement, timely completion of her employee audits, taking a lead role in developing her staff, taking appropriate disciplinary measures relating to her staff, and maintaining HIV files as dictated by program guidelines. Plaintiff was also suspended for 10 days in 1998 for discourteous treatment, violation of confidentiality of personnel records of City Employees, violation of departmental regulations, rules or procedures, and conduct unbecoming a public employee.

In 1999, Plaintiff received a rating of 2.89, which showed some improvement, but which did not quite make it into the "Good" category. Plaintiff received a 15-day suspension for disrespectful, accusatory, and subordinate conduct toward her supervisor and received a 29-day suspension for falsely representing the quality and quantity of work performed by an employee, falsifying an employee's attendance records, failing to take action to perform an assignment, and conduct unbecoming a public employee.

In August 2000, the Deputy Director, Dawn Broussard, Plaintiff's immediate supervisor, Kelly Hector, and the Director of Administration, Robert Elliott, conducted a review of the Mile Square Specialty Clinic, where Plaintiff was the Supervisor. The Mile Square Clinic received an overall rating of "Unacceptable," based on the overwhelming number of items they determined needed improvement. The reviewers found that Plaintiff had failed to provide adequate case reviews, adequately supervise clinic employees responsible for investigating cases, and complete timely personnel audits. Ultimately, Broussard approved Plaintiff's termination for failure to

adequately perform her supervisory duties as was reflected by the "unsatisfactory" state of the Mile Square Clinic. *Id.*

CDPH argues that because of Plaintiff's history of mediocre performance, the multiple disciplinary actions taken against her, and the unsatisfactory state of the Mile Square Clinic, she cannot establish that she was performing her job adequately and, thus, cannot establish her *prima facie* case for age discrimination or retaliation. If I had to make this determination based on Plaintiff's performance ratings and disciplinary actions alone, I would find that, although unlikely, Plaintiff could potentially establish she was performing her supervisory duties adequately. Despite receiving multiple suspensions, Plaintiff was consistently given a performance rating above that of "Requiring Improvement," indicating that while her performance may have been mediocre, it was not inadequate.

However, this history of mediocre performance combined with the unsatisfactory state of the Mile Square Clinic is enough to demonstrate that, in August 2000, Plaintiff was not adequately performing her duties as a Supervisor. The Mile Square Clinic was the only CDPH clinic to receive an "unacceptable" rating. Broussard, Hector, and Elliot agreed that the clinic's "unacceptable" condition resulted from Plaintiff's failure to provide proper oversight and guidance to her staff. In her Response, Plaintiff does not dispute the appropriateness of the "unacceptable" rating given to the clinic nor does she dispute that the "unacceptable" condition of the clinic was caused by her negligent supervision. Since Plaintiff has not disputed the validity of the Mile Square Clinic's "unacceptable" rating or established that the rating was given for reasons other than her poor supervisory performance, I find that Plaintiff cannot establish she was performing her duties in a satisfactory manner and, thus, cannot establish her *prima facie*

case for either age discrimination or retaliation. For this reason, I find that summary judgment is appropriate.

## 2. Similarly Situated Employees

CDPH also argues that Plaintiff cannot establish that she was treated less favorably than other similarly situated employees. In this case, a similarly situated employee would be a Supervisor whose clinic had been given an "unacceptable" rating and whose employment was not terminated or a younger Supervisor who had been accused of improper conduct and who had not been disciplined or terminated. In her Response, Plaintiff points to two other clinic Supervisors who she believes were treated more favorably: Roseland Clinic Supervisor Anthony Harding and Englewood Clinic Supervisor Pearl Nichols. However, neither the Roseland Clinic nor the Englewood Clinic received an "unacceptable" rating; those clinics were given a "needs improvement" rating. The fact that Harding and Nichols were not fired after receiving the "needs improvement" ratings is irrelevant here. Moreover, Plaintiff does not present any evidence of Supervisors who were accused of being insubordinate or rude, who allowed their children access to personnel files and pay stubs, or who falsified an employee's employment records and who did not receive disciplinary actions. Since Plaintiff has not presented any evidence that a similarly situated employee was treated more favorably, I find that she cannot establish her *prima facie* case for either age discrimination or retaliation and that summary judgment is appropriate.

## 3. Adverse Employment Actions

Additionally, CDPH argues that many actions of which Plaintiff complains do not rise to the level of adverse actions. Those alleged discriminatory/retaliatory actions are as follows: (1) receipt of an evaluation that was typed instead of in the "regular" format, (2) failure to administer

a planning meeting until one was requested, (3) violation of a previous settlement agreement, (4) termination of Plaintiff's Annual Leave in March 1999, (5) having to justify the need for a Lead DIS at the Mile Square Clinic, and (6) terminating Plaintiff's employment without first issuing low evaluation scores.

Not everything that makes an employee unhappy is an actionable adverse action. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). Only tangible employment actions that cause a significant change in employment status constitute actionable adverse actions. *Burlington Indus. v. Ellerth*, 524 U.S. 742, 753 (1998). Examples of actionable adverse actions include hiring, firing, failing to promote, reassigning with significantly different responsibilities, and a decision causing a significant change in benefits. *Id.* The action must cause a materially adverse change in the terms and conditions of employment that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993). Aside from Plaintiff's termination and possibly the alleged settlement agreement violation, none of the actions given above materially affected Plaintiff's employment. Receiving a typed evaluation, having to request a planning meeting, having her leave canceled, and having to justify the need for a Lead DIS did not tangibly or adversely affect the conditions of Plaintiff's employment and, therefore, do not constitute adverse employment actions.

### C. Pretext

Finally, CDPH argues that even if Plaintiff could establish a *prima facie* case for age discrimination or retaliation, she could not show that CDPH's non-discriminatory/ non-retaliatory explanation for its actions was pretextual. Once the plaintiff establishes her *prima facie* case, the burden shifts to the defendant to present a legitimate, non-discriminatory basis for

8

the adverse action. *Cowan v. Glenbrook Sec. Servs.*, 123 F.3d 438, 445 (7th Cir. 1997); *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000). If the defendant is able to do so, the burden shifts back to the plaintiff to establish that the proffered reason is merely a pretext for discrimination and/or retaliation. *Cowan*, 123 F.3d at 445; *Miller*, 203 F.3d at 1007.

CDPH's stated reasons for Plaintiff's low evaluations, suspensions, termination, and other disciplinary actions were her poor performance as Supervisor and her inappropriate behavior. Plaintiff has presented no evidence, other than her own self-serving statements, which in any way shows that CDPH was motivated by reasons other than Plaintiff's own poor job performance and inappropriate behavior. According, I find that summary judgment is appropriate on these grounds as well.

Defendant's Motion for Summary Judgment is GRANTED.

ENTER:

James B. Zagel
United States District Judge

DATE: 16 Dec 2004